The defendant, Willie Caldwell, and one Ernest Bryant were indicted for murder in the first degree of one Fred Raymont, while in the perpetration of a robbery on or about November 29, 1937. Each was tried separately. In Caldwell's case, the jury disagreed on the first trial, and a second trial resulted in a verdict of guilty of murder in the first degree, without a recommendation of mercy. A motion for new trial was overruled and appeal was prosecuted to the Court of Appeals, where the judgment of the trial court was reversed for error in a statement of the court to the jury. This court granted a motion for *Page 425 
leave to appeal from the judgment of the Court of Appeals.
The principal error complained of by the defendant concerns only the instructions given by the trial court to the jury on the question of its privilege to recommend mercy under the provisions of Section 12400, General Code. As a part of the general charge, the court instructed the jury on the question of mercy as follows:
"And now, ladies and gentlemen of the jury, if after a fair, careful, and impartial consideration of all of the evidence in this case you find that the defendant has been established guilty of murder in the first degree, then you will have one further duty to perform, and that is, you will determine whether or not you will extend or withhold mercy. I say if you find the defendant guilty of murder in the first degree on this indictment, it then becomes your duty to determine this important question. In that connection whether you recommend or withhold mercy is a matter solely within your discretion, calling for the exercise of your very best and most profound judgment, not motivated by considerations of sympathy or as a means of escaping a hard or disagreeable duty, but must beconsidered by you in the light of all the circumstances of thecase with respect to the evidence submitted to you and theother circumstances surrounding this defendant." (Italics ours.)
The jury, after deliberating for some time, at its own instance returned to the court room for special instructions. The record discloses the following conversation between the court and the jury:
"The Foreman: What are grounds for granting mercy?
"The Court: That rests solely and wholly in your sound discretion. You should determine whether or not in your discretion mercy should be granted from a consideration of the evidence, the character of the *Page 426 
crime and the attending circumstances. Are there any other questions which you have?
"The Foreman: No, I don't think so. I beg your pardon. I have another question or two. What are extenuating circumstances? Are they something which we can determine in our own judgment alone?
"The Court: No, if there are any, you must determine them from the evidence.
"(Exception by defendant).
"The Foreman: Well, then, may we consider sociological matters and environment in determining this question of granting mercy?
"The Court: No — they have nothing whatever to do with this case.
"(Exception by defendant)."
Thereupon the defendant, through his counsel, objected to the form and substance of the court's charge and requested that the following instructions be given to the jury:
"* * * Your honor, I request that you instruct the jury in substance as follows: In determining whether or not in your discretion you shall grant mercy to the defendant, you may consider environmental factors and sociological conditions, and in determining whether or not these factors exist you shall consider all the evidence permitted to go to you in this case, and all reasonable inferences to be derived therefrom. You may also consider, in making up your mind on the question of mercy, the appearance, demeanor and actions of the defendant as you have seen him here in open court.
"The Court: No. I cannot so instruct the jury.
"Thereupon, the defendant took his exception to the court's ruling."
Did the court commit error prejudicial to the rights of the defendant in any one or more of these charges?
Since the case of Howell v. State, 102 Ohio St. 411,131 N.E. 76, 17 A. L. R., 1108, it has been the settled *Page 427 
law in this state that the jury, in exercising its discretion to recommend mercy in cases of conviction of first degree murder, must do so in the light of all the facts and circumstances disclosed by the evidence. In paragraph one of the syllabus of that case, the court declared:
"Section 12400, General Code, giving the jury discretion to recommend mercy in cases of conviction of first degree murder, confers an absolute discretion which should not be influenced by the court. However, this discretion should be exercised in view of all the facts and circumstances disclosed by the evidence."
In paragraph three of the syllabus, the court announced:
"In such a case it is not error for the court, in its charge, to say to the jury that it was their duty 'to consider and determine whether or not, in view of all the circumstances and facts leading up to, and attending the alleged homicide as disclosed by the evidence,' they should or should not make such recommendation."
In its general charge, the court, in the instant case, followed the rule laid down in the Howell case, supra.
When the jury returned to the court room for additional instructions, the court, in answer to the first question: "What are the grounds for granting mercy?" again instructed the jury in accordance with the rules laid down in the Howell case,supra. The court referred the jury directly to the evidence, the character of the crime and the attending circumstances as the basis upon which to determine whether to recommend mercy.
The second inquiry made of the court by the jury foreman concerned "extenuating circumstances." The question was: "Are they something which we can determine in our own judgment alone?" The court answered by saying that these must be determined *Page 428 
from the evidence, again following the precepts of theHowell case.
The third question asked was whether the jury could consider sociological matters and environment in determining the question whether to recommend mercy. The court answered: "No — they have nothing whatever to do with this case."
In this we find no prejudicial error. Clearly, the question was not directed to the evidence of the en vironment of the defendant as contained in the record On the contrary, it was an attempt to ascertain whether the jury had a right to go outside and beyond the evidence in considering sociological matters and environment. That this is so is made particularly clear when the third question is read in the light of the answers given to the first two questions propounded. The court had twice directed the jury to the evidence — once in its answer to the first question, and again in its answer to the second question. The negative answer to the third question, which was not confined to the evidence, was, therefore, consistent with the answers theretofore given.
In the court's refusal to give the instructions requested by counsel for the defendant after the court had answered the questions propounded by the jury foreman, we find no prejudicial error. The requested instruction was substantially identical with those contained in the answers of the court to the jury, and its subject-matter was covered in the general charge. There was no occasion for repetition.
Judgment of the Court of Appeals reversed and judgment of the Court of Common Pleas affirmed.
Judgment reversed.
WEYGANDT, C.J., DAY, ZIMMERMAN, WILLIAMS, MATTHIAS and HART, JJ., concur.
MYERS, J., dissents. *Page 429